UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

HORACE W. CRUMP,

        Plaintiff,                    Case No. 1:10-cv-583

v.                                           Honorable Paul L. Maloney

IAN JANZ et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has been directed to pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim and as frivolous.

**Discussion**

I.  Factual allegations

Plaintiff Horace W. Crump presently is incarcerated for life following a 1996 conviction for first-degree murder. He currently is housed at the Lakeland Correctional Facility, though the actions he complains of occurred while he was housed at the Bellamy Creek Correctional Facility (IBC). Plaintiff previously has filed a number of civil rights cases in this Court and in the Eastern District of Michigan. In the instant complaint, he sues the following IBC employees: Assistant Resident Unit Supervisor Ian Janz; Resident Unit Manager M. Walczak; Warden Kenneth McKee; Resident Unit Officer (unknown) Schaefer; an unknown Resident Unit Officer or Assistant Resident Unit Supervisor (Jane Doe #1) and an unknown Nurse (Jane Doe #2).

Plaintiff was transferred to IBC on January 8, 2009 without his personal prisoner funds, medication, hygiene items, postage and some of his personal property, including his television and typewriter. Plaintiff previously was housed at IBC in December 2001, and, while there, he lodged numerous complaints and was twice the subject of investigation. He was transferred to the Upper Peninsula shortly thereafter, where he remained for seven years. He complains that his placement in the Upper Peninsula was detrimental to his family relationships.

Immediately after arriving at IBC, Plaintiff approached Defendant Janz, telling him that he was concerned that his prior experience at IBC in 2001 might lead to retaliation. Janz allegedly assured Plaintiff that, unless his security level was raised to maximum, he would not be transferred any time soon. Plaintiff also asked Janz for a $10.00 indigent loan, as provided under MICH. DEP'T OF CORR., Policy Directive 04.02.105, ¶ GG. Both Defendant Janz and Defendant Walczak refused to authorize the loan, so Plaintiff asked Defendant Warden McKee to authorize it personally. Defendant McKee consulted with Janz and Walczak, and Janz told Plaintiff that he "ain't

got nothin' comin'." (Compl., ¶15, docket #1 at 5.) Because Plaintiff's own funds were not available and Defendants would not authorize the loan, Plaintiff allegedly was "without deodorant, toothbrushes, toothpaste, postage, typing and carbon paper, and legal envelopes" for 35 days, between January 8 and February 12, 2009. (Compl., ¶16, docket #1 at 5.)

Plaintiff alleges that Janz and Walczak also refused to orient Plaintiff in a timely manner, resulting in Plaintiff not being classified for a job for six weeks. In addition, Plaintiff allegedly gave Janz a Prisoner Telephone List with his daughter's new number on January 9, 2009. He had to redo the list on January 12, 2009, but it was not submitted properly and it took two weeks to get the number on his list. He alleges that the telephone lists of other unnamed prisoners were processed properly and they did not have to wait as long. Defendants Walczak and McKee allegedly refused to intervene.

Plaintiff repeatedly asked Defendants Janz, Walczak and McKee for assistance in locating his missing property, which they allegedly refused to provide, even after his prior institution responded to his grievance with the information that the property was at IBC. Plaintiff alleges that other unnamed prisoners received more assistance with such requests.

On February 14, 2009, Plaintiff asked Defendant Schaefer for soap while Schaefer was in the supply room. Schaefer refused to get the soap because he was talking. Plaintiff complained to Defendants Janz, Walczak, and McKee about Schaefer's "blatant un-professionalism," and matters allegedly worsened thereafter. (Compl., ¶24, docket #1 at 6.) Plaintiff alleges that Schaefer was aware that Crump had no hygiene items, but he allegedly "repeatedly demeaned and humiliated Plaintiff by refusing to provide him with free state soap to shower, ostensibly in violation of MICH. DEP'T OF CORR., Policy Directive 03.03.130, ¶¶ C, I(5), and K(4).

On February 13, 2009, during a grievance interview with Assistant Deputy Warden S. Schooley, Schooley mentioned that Plaintiff's 2001 transfer to the Upper Peninsula had been the result of Plaintiff's request for a lateral transfer. Plaintiff told Schooley that the statement was a "blatant, conspicuous lie," and, "if it was done by Defendant Jane Doe #1, it was falsified in retaliation for Plaintiff's numerous complaints about the mishandling of his child-custody and habeas proceedings. Plaintiff reported that he recalled a conversation with Jane Doe #1, during which he informed her that he would grieve her if she continued to mishandle his legal affairs. Plaintiff alleges that his transfer in 2001 was retaliatory and based on a falsified document indicating that Plaintiff had made the request.

When Plaintiff was transferred to IBC in 2009, he did not have his medication. When he requested it from Defendant Nurse Jane Doe #2, the nurse allegedly was unprofessional and contradictory and refused to return Plaintiff's generic Prilosec, expecting him to obtain it in the medication line, though she admitted it would be less effective at those times. Plaintiff alleges that he suffered with an acid stomach and sleeplessness for two weeks, between January 8 and 22, 2009. Plaintiff further alleges that, while he was at IBC, his blood pressure was very high and had to be monitored. He experienced nosebleeds, fainting, and sleeplessness, and he was referred to psychiatric services.

Plaintiff alleges that he was retaliated against for the exercise of his First Amendment rights, that he was subjected to cruel and unusual punishment under the Eighth Amendment, and that he was deprived of equal protection. He also alleges that Defendants' conduct violated state tort law. He seeks declaratory relief and compensatory and punitive damages.

  II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A.     Eighth Amendment**

Plaintiff generally alleges that Defendants violated the Eighth Amendment by their conduct. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). The elements of an Eighth Amendment claim have both objective and subjective components. *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). First, the risk of harm to the prisoner must be objectively sufficiently serious. *Id.* Second, the plaintiff must show that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Id.*, 591 F.3d at 480 (6th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Plaintiff's principal Eighth Amendment claim appears to rest on his lack of deodorant, toothbrushes, toothpaste, postage, typing and carbon paper, and legal envelopes for 35 days. In *Flanory v. Bonn*, 604 F.3d 249, 256 (6th Cir. 2010), the Sixth Circuit recognized that, under certain circumstances, the deprivation of toothpaste over a long period of time with resulting injury is sufficient to raise an Eighth Amendment claim. Specifically, the court held that a plaintiff's allegations that he was deprived of toothpaste for 337 days and had consequently developed periodontal disease stated a claim under the Eighth Amendment for deliberate indifference to the

plaintiff's serious dental needs. The *Flanory* court acknowledged that more limited periods of deprivation of soap, toothbrushes, and toothpaste did not rise to the level of an Eighth Amendment violation. *See id.* at 254 (citing *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (no constitutional deprivation where prison officials failed to provide toilet paper for five days and soap, toothbrush, and toothpaste for ten days, notwithstanding other, significantly unsanitary conditions); *McNatt v. Unit Manager Parker*, No. 3:99-cv-1397, 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000) (no Eighth Amendment violation where inmates endured, among other deprivations, no toiletries or clothing for six days)).

Here, Plaintiff was deprived of a toothbrush and toothpaste for only 35 days – approximately one-tenth the length of deprivation in issue in *Flanory*. *See, e.g., Matthews v. Murphy*, No. 90-35458, 1992 WL 33902 (9th Cir. Feb. 25, 1992) (holding that an inmate's allegations that he was deprived of a towel, toothbrush, toothpowder, comb, soap and other personal hygiene items for approximately 34 days did not rise to the level of a constitutional violation where no allegations or evidence suggested that confinement conditions were generally unsanitary); *Robertson v. McRay*, No. 03-22823, at *7 (S.D. Fla. July 28, 2006) (failure to provide indigent kits containing hygiene items and envelopes, stamps and paper more than half the time over a two-year period did not violate the Eighth Amendment); *Fernandez v. Armstrong*, No. 3:02CV2252CFD, 2005 WL 733664, at *5-6 (D. Conn. Mar. 30, 2005) (the denial of toothpaste, toothbrush, shampoo and soap for sixteen days did not rise to the level of an Eighth Amendment violation where plaintiff did not allege any physical effects or injuries); *Holder v. Merline*, No. Civ. A. 05-1024 RBK, 2005 WL 1522130, at *6 (D.N.J. June 27, 2005) (three-week deprivation of a toothbrush and sneakers does not implicate the Eighth Amendment where no physical effects resulted). Moreover, here, unlike in *Flanory*, Plaintiff alleges no harm or risk of harm arising from his 35-day deprivation. *See Flanory*, 604 F.3d at 254

(recognizing that the objective component of the Eighth Amendment test is typically not met by temporary deprivations that result in no physical injury); *James v. O'Sullivan*, 62 F. App'x 636, 639 (7th Cir. 2003) (recognizing that a 49-day deprivation of soap, toothbrush and toothpaste may impair basic levels of sanitation and hygiene only if prisoner health and safety is jeopardized); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (holding that a 69-day denial of toothpaste may constitute a constitutional deprivation if plaintiff had to be treated by a dentist for bleeding and receding gums and tooth decay).

Further, Plaintiff does not allege that he was kept in unsanitary conditions or that he was deprived of soap or the opportunity to clean himself over any period of time (notwithstanding the fact that Defendant Schaefer may not immediately have gotten Plaintiff more soap on February 14, 2009, when asked). Plaintiff therefore had the ability to use soap and a cloth or towel to clean his teeth. While less pleasant than a toothbrush and toothpaste, such a limitation, in the absence of any obvious dental need, does not create an objectively serious dental need or condition. Further, while Defendants were aware that Plaintiff lacked toothpaste and a toothbrush, Plaintiff alleges no facts that would support a conclusion that they subjectively recognized a serious dental need or condition. Plaintiff therefore fails to allege facts that would show that the lack of a toothbrush and toothpaste for 35 days violated either prong of the Eighth Amendment test.

With respect to Plaintiff's claim that he lacked deodorant during this period, Plaintiff's Eighth Amendment claim is frivolous. Plaintiff does not allege that his ability to wash and keep himself clean was impaired in any way. The use of deodorant does not improve or impair cleanliness; its usefulness is merely cosmetic. Defendants' denial of deodorant therefore did not result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also James*, 62 F. App'x at 639 (holding that the denial of a comb, deodorant and cleaning supplies cannot

be said to have jeopardized a prisoner's health); *Harris v. Horel*, No. C 06-7761 SBA, 2009 WL 2761339, at *3-4 (N.D. Cal. Aug. 31, 2009) (denial of shampoo, lotion, deodorant, television and reading material for over one-and-one-half years did not offend the Eighth Amendment); *Jordan v. Flowers*, No. 06 C 6333, 2008 WL 5211552 (N.D. Ill. Dec. 9, 2008) (lack of deodorant does not state a sufficiently serious condition that implicates a constitutional concern). Further, Plaintiff's claim that he was denied paper, stamps and envelopes does not implicate the Eighth Amendment, as the deprivation does not create a risk to inmate health or safety. *See Coleman v. MacDonald*, No. 90-5048, 1990 WL 142388, at *1 (6th Cir. Sept. 26, 1990) (Eighth Amendment claim based on the fact that Plaintiff could not buy stamps in an amount less than $3.00 was frivolous); *Miskovitch v. Hostoffer*, No. 06-1410, 2010 WL 2404424, at *11, n.5 (W.D. Pa. May 19, 2010) ("[I]t goes without saying that the alleged denial of an inmate handbook, grievance forms, jail policies, envelopes, postage, paper, cosmetics and commissary privileges do not state a claim under the Eighth Amendment as none of these items can be considered a basic necessity.").

Plaintiff next argues that Defendant Jane Doe #2 would not give him possession of his generic Prilosec for two weeks after he transferred to ICF. He implies, however, that he was allowed to take the medication in the medication line, though he asserts that the medicine is ineffective when taken at the time the medication lines are conducted. He contends that he suffered symptoms of acid reflux during those two weeks.

Like other Eighth Amendment claims, a claim that an inmate was denied adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate

medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Plaintiff alleges only that Nurse Jane Doe #2 did not give him his prescribed medication to take to his cell, preventing him from taking it at will for two weeks. As a result of the delay, Plaintiff experienced discomfort from acid reflux. Plaintiff does not allege that he sought and was denied medical care for his acid reflux during the two-week period. He simply alleges that he did not have unlimited access to his Prilosec. On these allegations, Plaintiff fails to demonstrate that he had a sufficiently serious medical need that was left untreated. He therefore fails to allege facts supporting the objective component of his Eighth Amendment claim. Moreover, his allegations against Nurse Jane Doe #2 fail to show that she acted with the requisite deliberate indifference to his medical need.

Finally, Plaintiff makes an allegation that he had very high blood pressure during the period in issue. He does not, however, allege that any Defendant failed to address his medical need. Indeed, he acknowledges that his blood pressure was monitored because it was elevated. Plaintiff also was referred for psychiatric care, apparently to address his agitation. Plaintiff fails to make sufficient allegations that any Defendant acted with deliberate indifference to a serious medical need.

In sum, Plaintiff's allegations fail to state an Eighth Amendment claim.

### B. Equal Protection

Plaintiff alleges that he was denied equal protection when his telephone list was not processed as quickly as that of other, unidentified prisoners, and when Defendants failed to assist in locating Plaintiff's missing property. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right to photocopies under the Constitution.

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim,

Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff fails entirely to identify an individual with whom he was similarly situated. Further, he fails to allege that any Defendant acted purposefully in treating him differently. Instead, his conclusions are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555. Plaintiff therefore fails to state an equal protection claim.

### C. Retaliation

Plaintiff's only allegations of retaliation are limited to his claim that he was transferred from IBC to the Upper Peninsula in 2001 because of his complaints and grievances. Plaintiff alleges that Defendant Jane Doe #1 placed a false note in his file indicating that he was requesting a lateral transfer.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Plaintiff, however, cannot show that his transfer to the Upper Peninsula was an adverse action taken against him for filing grievances. As the Sixth Circuit explained in *Ward v. Dyke,* 58 F.3d 271 (6th Cir. 1995):

> Prisoners do not have a constitutional right to be incarcerated in any particular institution. *See Meachum v. Fano*, 427 U.S. 215 (1976). Moreover, the Supreme Court has held repeatedly that the ability to transfer prisoners is essential to prison management, and that requiring hearings for such transfers would interfere impermissibly with prison administration. *Id.*; *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Montanye v. Haymes*, 427 U.S. 236 (1976). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum*, 427 U.S. at 228.

*Ward*, 58 F.3d at 274. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted).

Plaintiff specifically alleges that his transfer was lateral, indicating that he was transferred to a facility with the same security classification as IBC. Plaintiff has no constitutional right to remain at a specific facility or to prevent a transfer to another same-level facility for a permissible reason. *Ward*, 58 F.3d at 274. Therefore, the transfer is insufficient to constitute an adverse action and Plaintiff fails to state a claim for retaliation.

Moreover, Plaintiff's complaint about the 2001 transfer unquestionably is time-barred. The timeliness of a claim asserted under 42 U.S.C. § 1983 is governed by the state statute of limitations for comparable claims. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[1] Plaintiff's complaint is untimely. He asserts a claim arising in 2001. Plaintiff had reason to know of the "harm" done to him at the time it occurred. Hence, his claim accrued in 2001. However, he did not file his complaint until 2010, well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well-established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir.1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

A complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint does not present a rational basis in law

---

[1] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statute enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

if it is time-barred by the appropriate statute of limitations. The Sixth Circuit repeatedly has held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at *1-2 (6th Cir. Oct. 22, 2002); *Paige v. Pandya*, No. 00-1325, 2000 WL 1828653 (6th Cir. Dec. 5, 2000). Accordingly, Plaintiff's retaliation claim will be dismissed as frivolous.

### D. State-Law Claims

Plaintiff alleges that Defendants' actions constituted a variety of state torts. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). To the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. Where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. *See Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998). This claim will be dismissed without prejudice.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim and as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  July 19, 2010         /s/ Paul L. Maloney
                              Paul L. Maloney
                              Chief United States District Judge